ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| KARLA M. ANGLERÓ GONZÁLEZ, Comisionada Electoral del Partido Popular Democrático (PPD)<br><br>Recurrida<br><br>v.<br><br>COMISIÓN ESTATAL DE ELECCIONES, por conducto de su Presidenta Interina JESSIKA D. PADILLA RIVERA<br><br>Recurrida<br><br>v.<br><br>ANÍBAL VEGA BORGES, Comisionado Electoral del Partido Nuevo Progresista (PNP); LILLIAN APONTE DONES, Comisionada Electoral del Movimiento Victoria Ciudadana (MVC); ROBERTO IVÁN APONTE BERRÍOS, Comisionado Electoral del Partido Independentista Puertorriqueño (PIP); JUAN MANUEL FRONTERA SUAU, Comisionado Electoral del Proyecto Dignidad (PD)<br><br>Partes con interés<br><br><br>ANÍBAL VEGA BORGES<br><br>Recurrente | KLCE202400998 | *Certiorari* que se acoge como una Revisión Judicial, procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br><br><br><br>Caso Núm.: SJ2024CV07515<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Sobre: Recurso de Revisión Judicial (Artículo 13.3, Ley 58-2020) |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de septiembre de 2024.

Comparece la parte recurrente, Aníbal Vega Borges, en calidad de Comisionado Electoral del Partido Nuevo Progresista

Número Identificador

SEN2024_____

(PNP). Impugna la *Sentencia* emitida y notificada el 30 de agosto de 2024, por el Tribunal de Primera Instancia, Sala de San Juan (TPI). En el referido dictamen, el TPI declaró con lugar sendas mociones de desestimación, incoadas por el propio compareciente y la Comisión Estatal de Elecciones (CEE), el 23 y 26 de agosto de 2024, respectivamente. En particular, el TPI amparó su dictamen en la falta de madurez de la causa de acción. En consecuencia, ordenó al Secretario de la CEE a notificar la *Resolución CEE-RS-24-015* a las partes adversamente afectadas, en referencia a los recusadores.

Acogemos el recurso como una *Revisión Judicial*, por virtud del Código Electoral, *infra.* No obstante, por economía procesal, conservamos la clasificación alfanumérica. Anticipamos que acordamos modificar el dictamen impugnado, a los fines de aclarar que la desestimación de la *Revisión Judicial* ante el TPI fue por falta de jurisdicción, ante la ausencia de notificación a las partes adversamente afectadas.

## I.

Los hechos relevantes del caso del título se originaron el 30 de abril de 2024, ocasión en que se presentaron 201 recusaciones, ante la Junta de Inscripción Permanente de Bayamón.[1] De los formularios R-001 "Solicitud de Recusación" y R-002 "Autorización para Emplazar" que constan en autos se desprende que los Comisionados Locales del PNP del Municipio de Comerío, Manuel Agapito Gorritz Ayala y Luis J. Rojas Rivera, escribieron sus nombres en un apartado de la juramentación, en el cual debía constar el nombre de los recusadores y diligenciantes, según consignados en ambos formularios.

---

[1] Véase, Apéndice, págs. 38-72; 81-82.

El 15 de mayo de 2024, durante una reunión de la Comisión Local en el Precinto 074 de Comerío, la Comisionada Local del Partido Popular Democrático (PPD), Karla Marie Rodríguez, impugnó las 201 recusaciones y solicitó su anulación.[2] Fundamentó su petición en que los Comisionados Locales no estaban autorizados a presentar recusaciones, de conformidad con el *Reglamento para el Trámite de las Recusaciones, Exclusiones e Inactivaciones*, aprobado el 22 de septiembre de 2023, según enmendado. La solicitud fue objeto de una votación en la que no hubo unanimidad por el voto en desacuerdo del PNP. Por ende, la presidenta de la Comisión Local de Comerío, Hon. Cristina Córdova Ponce, intervino y declaró sin lugar la petición de anulación. Su decisión no fue notificada a los recusadores, sujetos de la impugnación.

El 17 de mayo de 2024, la Comisionada Local del PPD apeló la determinación ante la CEE;[3] donde se elevó la *Certificación de Desacuerdo CEE-AC-24-078* fechada el 30 de julio de 2024 para su correspondiente resolución.[4] No se desprende del expediente la notificación a las partes con interés. Ponderada la controversia, la Presidenta Alterna, Hon. Jessika Padilla Rivera, dictó el 6 de agosto de 2024 la *Resolución CEE-RS-24-015*, la cual fue notificada el 18 de agosto de 2024, pero se omitió a los recusadores.[5] En esencia, la honorable Rivera Padilla justipreció el defecto del nombre de los Comisionados Locales como un error subsanable, por lo que declaró no ha lugar la *Apelación* y confirmó la decisión de la Comisión Local de Comerío 074 impugnada. Allí expresó:

> Conforme la Presidenta de la Comisión Local, luego de haber celebrado la Vista y tenido antes sí la evidencia documental y testifical de los comparecientes, resuelve ser un error en la juramentación, al poner el nombre del Comisionado Local que juramentaba, (lo cual es

---

[2] Apéndice, pág. 74-79.
[3] Apéndice, págs. 85-86.
[4] Apéndice, págs. 91-93.
[5] Apéndice, págs. 94-104.

permitido por ley) en lugar del nombre del recusador. Hay que observar que, efectivamente, el que comparece como recusador, y diligenciante, en la presentación de la solicitud Formulario R-001 y R-002 lo es persona distinta al Comisionado Local y su Alterno. De hecho, quien **FIRMA BAJO JURAMENTO DEL RECUSADOR**, con firma y letra de molde, en el Formulario R-001, y quien **LO DECLARA BAJO JURAMENTO Y APERCIBIMIENTO DE PERJURIO**, en el Formulario R-002, lo es propiamente la persona que comparece en la primera línea como recusador y diligenciante, respectivamente. El error que destaca la determinación de la Presidenta de la Comisión Local es que en el espacio provisto al pie del Formulario R-001 y R-002, donde lo que se acredita es el número de affidávit y la información del que juramentó, no es el juramento de quien recusa o diligencia. Tal error involuntario del Comisionado Local, quien tiene facultad para juramentar, resolvió la Presidenta Local que es subsanable. Concurrimos. Tal error puede ser subsanable por no alterar el acto propio del juramento en la línea donde estampa la firma el recusador y el diligenciante respectivamente, justo en el espacio que el propio formulario provee para firmar bajo juramento. (Énfasis en el original).

Inconforme, el 16 de agosto de 2024, la Comisionada Electoral del PPD, Karla M. Angleró González, presentó una solicitud de *Revisión Judicial* ante el TPI.[6] El recurso fue impugnado por sendas mociones desestimatorias incoadas por el Comisionado del PNP[7] y la CEE.[8] En suma, plantearon que el TPI adolecía de jurisdicción al no haberse notificado el recurso de revisión a todas las partes, incluyendo a la Comisión Local, a los recusados ni a los recusadores, quienes eran parte con interés en el caso.

El 28 de agosto de 2024, la Comisionada Electoral del PPD se opuso.[9] Sostuvo que ni los Comisionados Locales, recusadores o recusados eran partes indispensables, toda vez que el proceso no versaba sobre una apelación en los méritos de las recusaciones, sino que se limitaba a una revisión de una determinación de la

---

[6] Apéndice, págs. 18-37, con anejos a las págs. 38-106.
[7] Apéndice, págs. 107-119, con anejo a las págs. 120-257.
[8] Apéndice, págs. 258-279.
[9] Apéndice, págs. 280-294, con anejos a las págs. 295-297.

Presidenta Alterna de la CEE en cuanto a un desacuerdo sobre la validez de unas solicitudes de recusación.

Así, pues, el 30 de agosto de 2024, el TPI dictó una *Sentencia*, mediante la cual desestimó el recurso de *Revisión Judicial* por falta de madurez.[10] Basó su juicio en que la Comisionada Electoral del PPD no había demostrado la notificación del recurso a los recusadores. En particular, el TPI concluyó que los Comisionados Locales y Presidentes Municipales no eran partes adversamente afectadas, ya que aún no se habían realizado las vistas de recusación que mandata el Código Electoral de Puerto Rico de 2020, *infra*. Tampoco consideró indispensables a los recusados, debido a que todavía sus derechos no habían sido afectados, ya que el proceso apenas estaba en una etapa temprana. Ahora, el TPI coligió que los recusadores sí eran partes indispensables, toda vez que, de acogerse la impugnación de las recusaciones peticionadas, sí se afectaría el derecho de éstos a presentar tales recusaciones. Por consiguiente, el TPI ordenó la notificación de la *Resolución CEE-RS-24-015* a las partes adversamente afectadas.

No conteste, el 4 de septiembre de 2024, el Comisionado del PNP instó una *Solicitud de Reconsideración de Sentencia*.[11] En ésta, planteó que el TPI adolecía de falta de jurisdicción, la cual se retrotraía a la determinación de la Comisión Local de Comerío 074, la cual no fue notificada a los recusadores. Es decir, alegó que la CEE nunca ostentó jurisdicción para atender la *Apelación* en sus méritos al emitir la *Resolución CEE-RS-24-015*. Ello así, porque tanto la presidencia de la Comisión Local como la Comisionada Local del PPD incumplieron con notificar la decisión adoptada y la correspondiente *Apelación* a los recusadores impugnados. A esos

---

[10] Apéndice, págs. 1-11.
[11] Apéndice, págs. 298-302, con anejos a las págs. 303-312; reproducida sin anejos a las págs. 12-16.

efectos, solicitó la desestimación del recurso de *Revisión Judicial* por falta de jurisdicción y la devolución de los autos a la Junta Local de Comerío 074 para continuar con los trámites relacionados con las recusaciones pendientes de adjudicación.

El TPI rechazó los planteamientos argüidos. El 5 de septiembre de 2024, emitió una *Resolución* en la que declaró no ha lugar la solicitud para reconsiderar su dictamen.[12] Aún insatisfecho, el 16 de septiembre de 2024, el Comisionado del PNP incoó el presente recurso del título y esbozó el siguiente señalamiento de error:

> EL TRIBUNAL DE PRIMERA INSTANCIA ERRÓ AL DESESTIMAR EL RECURSO DE REVISIÓN PRESENTADO POR LA COMISIONADA ELECTORAL DEL PPD, AMPARÁNDOSE EN EL FUNDAMENTO DE FALTA DE MADUREZ, CUANDO LO PROCEDENTE EN DERECHO HUBIESE SIDO HACERLO POR FALTA DE JURISDICCIÓN Y DEVOLVER EL CASO A LA COMISIÓN LOCAL DE COMERÍO PARA LA CONTINUACIÓN DE LOS PROCEDIMIENTOS RELACIONADOS CON LAS RECUSACIONES PENDIENTES DE ADJUDICAR.

En cumplimiento de nuestra *Resolución,* la Presidenta Alterna y la Comisionada Electoral del PPD presentaron sus respectivas posturas. Con el beneficio de sus comparecencias, resolvemos.

**II.**

**A.**

Nuestra Carta Magna dispone que "[n]inguna persona será privada de su libertad o propiedad sin [el] debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes". Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1. Nuestro Tribunal Supremo ha afirmado que el debido proceso de ley se refiere al "derecho de toda persona a tener un proceso justo y con todas las debidas garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo*". Aut. Puertos v. HEO,* 186 DPR 417, 428 (2012),

---

[12] Apéndice, pág. 17.

que cita a *Marrero Caratini v. Rodríguez Rodríguez*, 138 DPR 215, 220 (1995). Es decir, "el concepto *debido proceso de ley* tiene dos vertientes: la sustantiva, que se refiere a la validez de las leyes que implementa el Estado en cuanto a su protección de los derechos de los ciudadanos, y la procesal, que se enfoca en garantizar un proceso justo y equitativo ante acciones estatales que interfieran con intereses privados". *Garriga Villanueva v. Mun. de San Juan*, 176 DPR 182, 196 (2009); además, *PVH Motor v. ASG*, 209 DPR 122, 130-131 (2022).

Como se conoce, a partir de la notificación correcta es que comienza a transcurrir un término para acudir a un foro de jerarquía superior para revisión, pues una notificación defectuosa priva de jurisdicción al foro revisor para entender en el asunto. *PVH Motor v. ASG, supra*, pág. 132. La notificación adecuada es un elemento indispensable del debido proceso de ley y del derecho que tiene una parte a ser oída y defenderse. *Mun. San Juan v. Plaza Las Américas*, 169 DPR 310, 329 (2006); *Rivera Rodríguez & Co. v. Stowell Taylor*, 133 DPR 881, 889 (1993). A través de la notificación de una decisión administrativa o judicial, las partes advienen en conocimiento de la acción tomada por el ente juzgador y otorga a la parte afectada la oportunidad de decidir si solicita o no una reconsideración o un recurso de revisión para impugnar la determinación adoptada. *Asoc. Vec. Altamesa Este v. Mun. San Juan*, 140 DPR 24, 34 (1996). Ante ello, resulta indispensable que se notifique adecuadamente cualquier determinación que afecte los intereses de un ciudadano. *Mun. San Juan v. Plaza Las Américas, supra*, pág. 329.

De otra parte, nuestro Tribunal Supremo ha definido *jurisdicción* como el poder o autoridad que ostentan los tribunales para considerar y decidir los casos y las controversias ante su

atención. *Beltrán Cintrón v. ELA*, 204 DPR 89, 101 (2020), que cita a *Torres Alvarado v. Madera Atiles*, 202 DPR 495 (2019).

Es norma reiterada que los tribunales debemos ser celosos guardianes de nuestra jurisdicción, ya que no tenemos discreción para asumirla si no la hay. Por ello, las cuestiones relativas a la jurisdicción son privilegiadas y, como tal, deben atenderse y resolverse con preferencia y prontitud. La falta de jurisdicción no es susceptible de ser subsanada. Más aún, ante un cuestionamiento de falta de jurisdicción, estamos compelidos a auscultarla, toda vez que el planteamiento jurisdiccional incide directamente sobre el poder para adjudicar una controversia. Un dictamen emitido sin jurisdicción es nulo en Derecho y, por lo tanto, inexistente. En consecuencia, una vez un tribunal determina que no tiene jurisdicción para entender en el asunto presentado ante su consideración, procede la inmediata desestimación del recurso apelativo de conformidad con lo ordenado por las leyes y los reglamentos. *S.L.G Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 882-883 (2007); *Torres Alvarado v. Madera Atiles*, *supra*, págs. 499-500; además, *Mun. de San Sebastián v. QMC Telecom*, 190 DPR 652, 660 (2014); *Suffront v. A.A.A.*, 164 DPR 663, 674 (2005).

**B.**

La Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico garantiza "la expresión de la voluntad del pueblo mediante el sufragio universal, igual, directo y secreto" y la protección del "ciudadano contra toda coacción en el ejercicio de la prerrogativa electoral". Art. II, Sec. 2, Const. ELA, LPRA, Tomo 1. A estos efectos, la Ley Núm. 58 de 20 de junio de 2020, Código Electoral de Puerto Rico de 2020, 16 LPRA sec. 4501 *et seq.* (Código Electoral), aspira armonizar "la amplia tradición democrática de los ciudadanos americanos de Puerto Rico; las disposiciones constitucionales estatales y federales; y los estándares legales para

la administración de elecciones y votaciones ordenadas por ley, incluyendo su modernización e innovación". 16 LPRA sec. 4502 (Art. 2.2). Por igual, el Código Electoral reconoce "[l]a protección del Elector contra todo acecho u hostigamiento de otro para formular una recusación que pretenda excluirlo del Registro General de Electores y, por ende, privarlo de su derecho al voto". 16 LPRA sec. 4561 (7) (Art. 5.1).

En lo que compete al recurso del título, el Artículo 2.3 del Código Electoral 16 LPRA sec. 4503 (94), define en parte, el término *recusación* como el "[p]rocedimiento para impugnar el estatus de un Elector en el Registro General de Electores". Para ser presentada, evaluada y adjudicada, la aludida disposición exige que toda recusación "deberá cumplir con los requisitos de esta Ley". *Id.* Por ende, entre otros fines y dentro de los parámetros estatuidos, la recusación procura excluir o inactivar a un elector del Registro. *Com. Electoral PPD v. Comisionado Electoral PNP*, 205 DPR 559, 574 (2020).

El Artículo 5.16 del Código Electoral, 16 LPRA sec. 4576, atiende el procedimiento de recusación de electores.[13] La disposición legal establece que toda solicitud de recusación contra un elector deberá contener el nombre completo del elector, su fecha de nacimiento, dirección residencial y los motivos en que se basa la recusación, tales como: (a) ciudadanía; (b) domicilio; (c) edad; (d) suplantación; (e) fallecimiento; (f) incapacidad mental; o (g) duplicidad. *Id.*

> Las solicitudes de recusación por las causales (a), (b), (c) y (d) antes mencionadas deberán presentarse juramentadas ante la Comisión Local del precinto al cual corresponda el Elector. El juramento requerido

---

[13] De hecho, en cuanto a las apelaciones provenientes de una Comisión Local, el Artículo 4.5 del Código Electoral, 16 LPRA sec. 4545, establece que "[l]as recusaciones contra Electores sólo se presentarán, procesarán, evaluarán y adjudicarán siguiendo rigurosamente las reglas y los procedimientos dispuestos en los Artículos 5.16, 5.17 y 5.18 de esta Ley".

podrá ser prestado ante cualquier integrante de la Comisión Local, notario público, secretario de cualquier tribunal o funcionario autorizado por ley para tomar juramentos en Puerto Rico. Una vez el Presidente de la Comisión Local reciba la solicitud de recusación señalará una vista dentro de los diez (10) días siguientes para oír la prueba que corresponda, debiéndose citar al Elector recusado, al recusador y a cualquier otra persona que las partes solicitaren sea citada. Se notificará, asimismo, a los Comisionados Locales de los distintos partidos políticos y a los presidentes municipales de los comités políticos de los distintos partidos políticos. La Comisión, previa solicitud y justificación al efecto, tendrá facultad para extender el término de la realización de vistas. [...] La validez de una solicitud de recusación será decidida por acuerdo unánime de los miembros presentes de la Comisión Local al momento de atender la misma. Cuando no hubiere tal unanimidad, la recusación será decidida por el Presidente de la Comisión Local, siendo esta la única ocasión en que dicho Presidente podrá intervenir en una recusación. Una vez se decida que procede la recusación, el Presidente de la Comisión Local ordenará la exclusión del Elector en el Registro General de Electores. Cuando las solicitudes se basen en lo dispuesto en los incisos (e), (f) y (g) de este Artículo, se procederá con la exclusión conforme determine la Comisión por reglamento. El Presidente de la Comisión Local especificará en la orden de exclusión si la decisión fue tomada por unanimidad o por determinación del Presidente de la Comisión Local y la razón de la exclusión. También deberá notificar de su acción a la Comisión, Comisionados Locales, al recusador y al recusado. La ausencia del Elector recusado de la vista, no releva al recusador de presentar pruebas. Tanto el recusado como el recusador podrán apelar ante la Comisión la determinación dentro de los cinco (5) días siguientes, excepto lo dispuesto para las recusaciones por domicilio electoral.

Por su parte, la Sección 2.1, *Quiénes pueden promover una recusación*, del *Reglamento para el Trámite de las Recusaciones, Exclusiones e Inactivaciones* (Reglamento) dispone como sigue:

La Comisión Estatal de Elecciones y cualquier elector del precinto correspondiente al recusado, podrá promover cualquier acción de recusación, con excepción de los Oficiales de Inscripción y los empleados adscritos al Centro Estatal de Servicios Integrados al Elector (en adelante CESI) quienes, por razón de sus funciones, no podrán promover ni diligenciar recusaciones. Tampoco podrán presentar

recusaciones lo(a)s Comisionado(a)s Locales ni sus Alterna(o)s.

En cuanto a la juramentación, el inciso (4) de la Sección 3.1 del Reglamento indica que, en los casos de recusaciones por ciudadanía, domicilio, edad y suplantación, "[e]l recusador deberá completar el área provista para el juramento y entregar la solicitud juramentada". Añade que la persona autorizada para tomar juramento de conformidad con la Sección 3.2 (5) del Reglamento, puede juramentar el formulario.

En la Sección 3.10 del Reglamento se establece que "[l]as decisiones de la Comisión relativas a recusaciones podrán ser apeladas…". Con relación a la notificación, la reglamentación estatuye en la Sección 3.11 lo que sigue:

> SECCIÓN 3.11- FORMA DE LA APELACIÓN DE RECUSACIONES - **NOTIFICACIÓN**
>
> La apelación en los casos de recusaciones se formalizará radicando el formulario Escrito de Apelación (R-006), que provee la Comisión, o mediante un escrito en cualquier otro formato. **El apelante deberá notificar sobre la apelación al Presidente de la Comisión Local, a los Comisionados Locales y a la Secretaría de la Comisión con copia del mismo. También, deberá notificar al recusado o al recusador, según fuera el caso**. La notificación de la apelación deberá ser realizada dentro del mismo término dispuesto para la apelación. (Énfasis nuestro).

Asimismo, la determinación de la CEE es revisable ante el Poder Judicial, por virtud del Código Electoral. Arts. 13.1-13.6 del Código Electoral, 16 LPRA secs. 4841-4846. El Código electoral estatuye que la parte promovente tendrá la responsabilidad de notificar copia del recurso de revisión a través de la Secretaría de la Comisión, **así como a cualquier otra parte adversamente afectada**, dentro del término para recurrir al Tribunal. Art. 13.2 del Código Electoral, 16 LPRA sec. 4842.

Esbozado el marco jurídico pertinente, pasemos a aplicarlo a los hechos procesales que nos ocupan.

**III.**

En la presente causa, el Comisionado Electoral del PNP aduce que el TPI incidió al desestimar el recurso de *Revisión Judicial* ante sí bajo el fundamento de falta de madurez, cuando lo correcto en Derecho hubiese sido hacerlo por falta de jurisdicción. Sostiene, además, que procedía devolver el caso ante la Junta Local de Comerío 074, con el fin de dar continuidad a los procedimientos de las recusaciones aún pendientes de adjudicación. Le asiste la razón.

Según lo reseñado, el 15 de mayo de 2024, la Comisionada Local del PPD impugnó sin éxito 201 solicitudes de recusaciones, al argumentar que los formularios transgredían la reglamentación aplicable a dicho proceso. No hubo unanimidad entre los Comisionados Locales y la honorable Córdova Ponce de la Comisión Local resolvió en contra de la impugnación, basándose en que se había dado cumplimiento al proceso, ya que los errores de forma señalados no viciaban la validez de las recusaciones. Empero, esta decisión no fue notificada a los recusadores afectados. En respuesta, el 17 de mayo de 2024, la Comisionada Local del PPD apeló la determinación. No obstante, la funcionaria omitió notificar el recurso apelativo a las partes afectadas, incluyendo a los recusadores que promovieron las recusaciones cuestionadas, de conformidad con la Sección 3.11 del Reglamento, antes citada.

Aun así, la CEE asumió jurisdicción y dictó la *Resolución CEE-RS-24-015*. La decisión refrendó la determinación de la Comisión Local. Sin embargo, tampoco surge de los autos que el pronunciamiento haya sido notificado a las partes afectadas y con interés. Luego, el dictamen fue objeto de un recurso de *Revisión Judicial* ante el TPI el 16 de agosto de 2024, cuya *Sentencia* desestimatoria revisamos.

Luego de un análisis ponderado del expediente, somos del criterio que, desde el inicio de los procedimientos impugnatorios, la

falta de notificación a las partes adversamente afectadas privó de jurisdicción no sólo al TPI, sino también a la CEE. Véase, por ejemplo, las declaraciones juradas de tres recusadores, quienes bajo juramento afirmaron que la Comisionada Local del PPD no les notificó la *Apelación* ante la CEE.

Es sabido que una *parte adversamente afectada* es aquélla con "un interés sustancial en la controversia porque sufre o sufrirá una lesión o daño particular...". *Muns. Aguada y Aguadilla v. JCA*, 190 DPR 122, 135 (2014), que cita a *Fund. Surfrider y otros v. A.R.Pe.*, 178 DPR 563, 579 (2010). Claro está, el daño tiene que ser claro, específico y no puede ser abstracto, hipotético o especulativo. *Id*. En el caso del título, es evidente que los promoventes de las recusaciones son partes con interés en la controversia de nulidad de los 201 formularios de recusación que se dirimió en la Comisión Local, en la CEE y en el TPI. Éstos son ineludiblemente partes adversamente afectadas con derecho a ser notificados de la decisión de la presidencia de la Comisión Local de Comerío, la *Apelación* y la *Resolución CEE-RS-24-015*.

Por consiguiente, es forzoso concluir que la ausencia de notificación transgredió el debido proceso de ley de los recusadores, como partes que resultarían adversamente afectadas. Nótese que si la honorable Córdova Ponce de la Comisión Local de Comerío, la CEE o el TPI hubieran acogido el planteamiento de la Comisionada Local del PPD, las recusaciones habrían sido anuladas sin el conocimiento ni participación de sus promoventes.

En fin, la falta de perfeccionamiento ante la ausencia de notificación a las partes con interés, tanto de la determinación de la honorable Córdova Ponce, como del recurso de *Apelación*, invalidó el resto del proceso. Es decir, tanto el foro administrativo de la CEE como el judicial estaban privados de jurisdicción. En consecuencia, procede modificar el dictamen aquí impugnado.

**IV.**

Por los fundamentos expuestos, modificamos la *Sentencia* de 30 de agosto de 2024, a los efectos de desestimar el recurso de *Revisión Judicial* por falta de jurisdicción, ante la ausencia de notificación a las partes adversamente afectadas. En consecuencia, devolvemos la causa ante la Junta Local de Comerío 074 para la continuación de los procedimientos.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones